## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERANCE CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. _____ |
| DIGIMARC CORP., | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, Verance Corporation ("Verance"), by and through its attorneys, files the following Complaint for Declaratory Relief against Digimarc Corporation ("Digimarc"), and in support thereof, alleges as set forth below:

## NATURE OF ACTION

1. This action is for a declaratory judgment of invalidity and non-infringement of U.S. Patent Nos. 5,636,292, 5,832,119, 5,850,481, 6,122,392, 6,266,430, 6,307,949, 6,330,335, 6,353,672, 6,381,341, 6,404,898, 6,542,620, 6,647,129, 6,778,682, 6,983,051, 7,113,614, 7,181,022, 7,248,717, 7,747,038, 7,499,566, 7,536,555, 7,650,009, and 7,672,477 (collectively, the "Digimarc Patents"). True and correct copies of the Digimarc Patents are attached as Exhibits A through V, respectively.

2. On information and belief, as of the filing of the Complaint, Digimarc holds all rights, title and interest in the Digimarc Patents.

## THE PARTIES

3. Verance is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 4435 Eastgate Mall, Suite 350, San Diego, California 92121.

4. On information and belief, Digimarc is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 9405 SW Gemini Drive, Beaverton, Oregon, 97008. According to its website, Digimarc's primary business is licensing its intellectual property portfolio in the fields of digital watermarking and content identification.

## JURISDICTION AND VENUE

5. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and 112. Based on the allegations set forth in this Complaint, there is an actual controversy between Verance and Digimarc with respect to the validity and infringement of the Digimarc Patents.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

7. On information and belief, Digimarc is subject to the personal jurisdiction of this Court because Digimarc is incorporated under the laws of Delaware and has designated an agent for service of process in Delaware.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## BACKGROUND

**Digital Watermarking**

9. Music and film piracy is a multi-billion dollar problem that harms many participants in the global entertainment industry, and digital watermarking technology has earned its place as a reliable and valuable method of confronting this issue. Watermarking technology allows imperceptible information to be placed in content, identifying, for instance, both the content and its permitted uses. Although utilization of watermarking technology has accelerated

substantially in the past 15 years, the concepts behind it have existed for decades. Over 50 years ago, in 1954, Emil Hembrooke filed U.S. Patent No. 3,004,104, describing an invention for watermarking a musical presentation by pulsing a narrow filter over an audio signal in a sequential pattern corresponding to an identification code.

10. After Hembrooke's advance, interest in watermarking systems expanded continuously in the following decades as the technology for media recording, processing, and transmission (and the associated industries for related research and development) advanced. By the late 1980s and early 1990s, growth in computer processing capability allowed watermarks to be embedded digitally and hidden using more sophisticated techniques than ever before. Research and development at the Recording Industry Association of America led to the 1991 filing of U.S. Patent No. 5,319,735, which used spread-spectrum communications techniques to embed digital copyright information in audio signals and psychoacoustic modeling to ensure that the digital information was inserted only at levels where it was unlikely to be perceived by listeners.

11. Verance was formed in 1999 as the result of a merger of two pioneers in the digital watermarking field — ARIS Technologies, Inc. ("ARIS") and Solana Technology Development Corporation ("Solana"), both founded in 1995. ARIS and Solana were focused on developing innovative digital watermarking technologies to meet the needs of the recorded music and motion picture industries for managing copyrights in the digital age. Verance's audio watermarking technology, called VCMS/A, was selected in 1999 as a worldwide standard for identifying and limiting the use of unauthorized copies of copyrighted works in the DVD-Audio format by the 4C Entity, LLC (which created the overall copy protection scheme for DVD-

3

Audio) and in portable music players by the Secure Digital Music Initiative ("SDMI") standards group.

12. In 2007, the current generation of Verance's technology, Cinavia, was selected as a component of the security architecture in the Blu-ray Disc format for distribution and playback of high-definition audiovisual content. Like VCMS/A, Cinavia is incorporated into recording and playback devices for detection of the watermark in content. If the watermark indicates that a particular use is unauthorized, playback or copying of content can be stopped or the audio muted and an explanatory message is displayed.

13. Digimarc, which was also founded in 1995, began commercializing products in 1996 that inserted digital watermarks into still images for copyright identification purposes.

14. On information and belief, at the time of Digimarc's incorporation, it obtained from one of its founders a patent application filed in 1993 relating primarily to image watermarking technology and a handful of additional patent applications that were all continuations-in-part of that original filing. Between 1995 and 1999, Digimarc filed more than one hundred additional continuations-in-part of the original 1993 patent application.

15. In 1999 and 2000, after accumulating a number of issued patents, Digimarc—who was at the time an active participant in the SDMI standards group—wrote the group demanding that its members, including Verance, license its patent portfolio.

**The Prior Litigation And Settlement**

16. Shortly after Verance customers first began to ship products incorporating VCMS/A in 2000, Digimarc filed two patent lawsuits against Verance in Oregon, alleging that Verance's VCMS/A products infringed four patents, all of which were continuations-in-part of Digimarc's original 1993 patent application (U.S. Patent Nos. 5,636,292, 5,832,119, 5,850,481

and 6,122,392). In 2001, around the same time the four patents emerged from reexamination with the relevant claims having substantially different and narrower scope, Digimarc sued Verance a third time on another continuation-in-part patent. During that litigation, five more of Digimarc's continuation-in-part patents were added, bringing the total to ten asserted patents. Digimarc also sued Verance's customer SESAC, Inc., a performing rights organization that used Verance's watermarking technology to manage the rights of composers of musical works, and threatened to sue other Verance customers as well if Verance refused to license Digimarc's patents.

17. Verance's business suffered because of Digimarc's threats and lawsuits. As the litigation progressed, Verance realized that it had no choice but to license Digimarc's patents—there was simply not enough money to see the litigation through to its proper conclusion. Despite the fact that Verance believed—and continues to believe—that Digimarc's patents are invalid, unenforceable and not infringed, Verance was forced to license a substantial portion of Digimarc's patent portfolio at a commercially unreasonable price to get clearance for its products and customers.

18. As part of the license, Digimarc dismissed all its claims against Verance without prejudice. Verance also retained its rights to challenge the validity and enforceability of Digimarc's patents as well as non-infringement in subsequent proceedings.

**The License Is Amended And Expanded**

19. In 2003, Verance was ready to expand its VCMS/A audio copy control technology into a new field of use—video playback control—but Digimarc had explicitly excluded this field of use from Verance's license. In order to obtain assurances that Digimarc would not sue Verance or its customers in this new field, Verance was forced to agree to an

amendment to the original license which set forth an unconscionably high royalty on Verance's revenues.

**Subsequent Attempts To Renegotiate Are Rebuffed**

20. Verance continued to make all the payments required by Digimarc under the license, but soon after the amendment, the prospects for Verance's business appeared uncertain. Unable to continue the burdensome payments, Verance met with Digimarc with the goal of renegotiating. Digimarc agreed to accept some payments late, but refused to change the structure of the license.

21. More recently, Verance's current chief executive met face to face with Digimarc's chief executive to revisit again a modification of the royalty structure of the license. But Digimarc again refused to modify the license.

22. Digimarc's responses to subsequent inquiries from Verance to open discussions have all been similar. Each overture from Verance is answered with the explicit expectation that Verance continue paying Digimarc's exorbitant guaranteed minimum payments and royalty rates in full, and includes veiled references to Digimarc's willingness to sue Verance and its customers, as they did in 2000-2002. As a result, Verance has concluded that Digimarc prefers a status quo enforced by the threat of termination and is unwilling to renegotiate or consider any reasonable modifications to the license.

**The Status Quo Cannot Be Maintained**

23. Verance has paid every dollar demanded by Digimarc over the years, and has elected to remain in good standing despite a license that effectively obligates, for certain products, payments to Digimarc in excess of 100% of revenues. During the same period, Verance has discovered additional prior art and its products have changed and evolved. Both of

these factors have only reinforced Verance's long held position that its products do not infringe any Digimarc patents, and further, that the Digimarc patents are invalid and unenforceable. Most importantly, unlike before, Verance's business has grown to a point that it now has the resources to challenge the Digimarc Patents.

24. Based on Digimarc's past actions, Verance has every reason to expect that if it fails to perform under the license in any respect or repudiates the license, Digimarc will immediately sue Verance and its customers for patent infringement.

25. An actual and justiciable controversy exists between Verance and Digimarc as to whether the Digimarc Patents are valid, enforceable and infringed. During the pendency of this litigation, Verance has every intention of remaining in good standing and continuing to fully perform its obligations under the existing license, which provides ongoing clearance to Verance and its customers. *See MedImmune v. Genentech*, 549 U.S. 118 (2007). This controversy is of the sufficient immediacy and reality necessary to warrant issuance of a declaratory judgment.

## COUNT I

### (Declaratory Judgment of Invalidity of the Digimarc Patents)

26. Verance repeats and realleges each and every allegation contained in paragraphs 1-25 as if fully set forth herein.

27. On information and belief, each of the Digimarc Patents is invalid for failure to satisfy one or more of the conditions of patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

28. An actual, substantial and immediate controversy exists between Verance and Digimarc as to whether the claims of the Digimarc Patents are valid.

29. The prior litigation history, relations between the parties, and prior threats by Digimarc demonstrate the sufficient immediacy of the controversy to warrant issuance of a declaratory judgment.

30. Verance is therefore entitled to a declaration that the Digimarc Patents are invalid.

## COUNT II

### (Declaratory Judgment of Non-Infringement of the Digimarc Patents)

31. Verance repeats and realleges each and every allegation contained in paragraphs 1-30 as if fully set forth herein.

32. Verance has not infringed and does not infringe any valid asserted claim of the Digimarc Patents.

33. An actual, substantial and immediate controversy exists between Verance and Digimarc as to whether the use, making, sale or offering for sale of any Verance product infringes any valid claim of the Digimarc Patents.

34. The prior litigation history, relations between the parties, and prior threats by Digimarc demonstrate the sufficient immediacy of the controversy to warrant issuance of a declaratory judgment.

35. Verance is therefore entitled to a declaration that it does not infringe, literally or under the doctrine of equivalents, directly or indirectly, by inducement or contribution, any valid claim of the Digimarc Patents.

## RESERVATION OF RIGHTS

36. Subject to Fed. R. Civ. Proc. 15(a), Verance hereby gives notice that it may amend this Complaint to assert a claim for unenforceability of the Digimarc Patents or request an

adjudication under the license with respect to exhaustion and misuse of Digimarc's patent rights. Verance does not waive any rights to amend this Complaint to include other claims as well.

## PRAYER FOR RELIEF

WHEREFORE, Verance respectfully requests:

A. A Declaratory Judgment that each claim of the Digimarc Patents are invalid;

B. A Declaratory Judgment that Verance has not infringed and does not infringe any claim of the Digimarc Patents either literally or under the doctrine of equivalents, directly or indirectly, or by inducement or contribution;

C. A Judgment enjoining Digimarc, its agents, licensees, servants, employees, and/or attorneys from asserting or continuing infringement litigation, from otherwise participating or assisting in infringement litigation, and from threatening Verance or any of its customers, dealers, agents, licensees, servants, or employees with infringement litigation, or charging any of them, either verbally or in writing, with infringement of the Digimarc Patents;

D. A Judgment declaring Verance's license with Digimarc void, and awarding Verance all royalties paid to Digimarc under the license from the date of filing of this suit.

E. A Judgment declaring this to be an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Verance its reasonable attorneys' fees, expenses, and costs in this action; and

F. Such other further and different relief as the Court deems just and proper.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Alfred R. Fabricant
Lawrence C. Drucker
Peter Lambrianakos
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, NY 10019-6708
Tel.: (212) 277-6500

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Matthew B. Weinstein
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel.: (202) 420-2200

*Attorneys for Plaintiff Verance Corp.*

Dated: September 30, 2010
984354 / 36099